IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS ARTHUR ENTREKIN, )<br>as Executor of the Last Will and )<br>Testament of Edith L. Entrekin, Deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTERNAL MEDICINE ASSOCIATES )<br>OF DOTHAN, P.A., *et al.*, )<br>)<br>Defendants. ) | CASE NO. 2:10-CV-557-WKW [WO] |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on Defendants' Motion to Compel Arbitration and Stay Proceedings. (Doc. # 10.) The issues having been fully briefed and carefully considered by the court, Defendants' motion is due to be denied.

**I. JURISDICTION**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of each.

**II. BACKGROUND**

Plaintiff Thomas A. Entrekin, as the Executor of Edith L. Entrekin's estate, filed suit against Internal Medicine Associates of Dothan, P.A. ("IMAD"), Calvin L. Reid, M.D. ("Dr. Reid"), Westside Terrace, LLC d/b/a Westside Terrace Health & Rehabilitation Center ("Westside Terrace"), and Turenne & Associates, LLC ("Turenne") (collectively

"Defendants"). Plaintiff alleges the following facts. Mrs. Entrekin suffered an acute myocardial infarction on June 12, 2008. She spent the next several days at two different hospitals, and was placed on a Coumadin[1] regimen which required her to take 5.0 mg. per day for two days, then 2.5 mg. for one day, and to continue repeating that medication cycle. Mrs. Entrekin was subsequently discharged from the second hospital, and on June 20, 2008, she entered into an agreement ("Admission Agreement") with Westside Terrace for physician, nursing, and hospital and nursing services in exchange for compensation. (Doc. # 10, Ex. A-1.) Immediately upon her arrival, Dr. Reid, of IMAD, who works as a physician at Westside Terrace, changed Mrs. Entrekin's Coumadin regimen to 5.0 mg. on even days and 2.5 mg. on odd days. The net result was a decrease in the amount of Coumadin for Mrs. Entrekin. Defendants conducted clotting studies on June 24 and June 27, 2008, which revealed that Mrs. Entrekin was inadequately anti-coagulated, and that she was at an increased risk of developing blood clots. Despite these test results, Defendants did not adjust Mrs. Entrekin's Coumadin regimen.

On the morning of June 30, 2008, Mrs. Entrekin voiced complaints of chest pain and refused to participate in physical therapy. She was provided pain medication and was repositioned. Dr. Reid visited Mrs. Entrekin in the afternoon and, tragically, found her unresponsive. He pronounced her dead at the scene. An autopsy on July 3, 2008, revealed

---

[1] Coumadin is an anti-coagulant medication used to prevent blood clots, such as the one which allegedly caused Mrs. Entrekin's June 12, 2008, myocardial infarction.

that a myocardial infarction caused by a blood clot completely obstructed blood flow, lethally damaging Mrs. Entrekin's heart muscle.

The Complaint (Doc. # 1), filed on June 28, 2010, pursuant to Ala. Code §§ 6-5-410, 6-5-480 *et seq.*, seeks the statutory punitive award for the wrongful death of Mrs. Entrekin. Defendants have moved to compel arbitration and stay proceedings, contending that the suit is controlled by the arbitration provision of the Dispute Resolution Agreement ("DRA") found within Mrs. Entrekin's Admission Agreement. (Doc. # 10, Ex. A-1.) The DRA states that it governs:

> All claims or disputes that would constitute a cause of action in a court of law . . . that [Mrs. Entrekin] or [Mrs. Entrekin's] estate, successors, assigns, heirs, personal representatives, executors, and administrators may have now or in the future against [Westside Terrace], any company affiliated with [Westside Terrace], or any of [Westside Terrace's] officers, directors, managers, employees, or agents acting in such capacity, or that any other person may have arising out of or relating in any way to [Mrs. Entrekin's] stay at [Westside Terrace] . . . .

(DRA 1.) The DRA, signed only by Mrs. Entrekin herself, goes on to enumerate a broad range of disputes, present or future, that are covered by the agreement, including "tort claims" and "claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance." (DRA 1.) Defendants contend that this claim is subject to arbitration under the DRA because Plaintiff is suing as Mrs. Entrekin's executor and because wrongful death claims fall within the scope of the DRA signed by Mrs. Entrekin. (Defs.' Br. in Supp. 4; Defs.' Reply 2.)

3

Plaintiff filed a response in opposition (Doc. # 15), arguing, among other things, that because the claim is brought under the wrongful death statute, it is not a claim belonging to Mrs. Entrekin or her estate. *See Holt v. Stollenwerck*, 56 So. 912, 912-13 (Ala. 1911) (stating that the wrongful death cause of action "is vested in the personal representative alone," and that "the right of action is therefore nonassignable at law and in equity"). Plaintiff argues that because the wrongful death claim does not belong to Mrs. Entrekin or her estate, it is not covered by *Mrs. Entrekin's* agreement to submit her claims to arbitration. Defendants submitted a reply (Doc. # 16), and Plaintiff filed a supplemental response with leave of court (Doc. # 17, Attach. 1).

## III. STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving [interstate] commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Accordingly, the courts "rigorously enforce" arbitration agreements. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). The FAA provides that "upon any issue

4

referable to arbitration under an agreement in writing for such arbitration," and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Arbitration is, however, a matter of contract; thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582. Ultimately, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Tech. Inc.*, 475 U.S. at 649). In determining which claims are arbitrable, the court looks to the intent of the parties, and in so doing, gives full effect to all provisions in the contract. *Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1218 (M.D. Ala. 2006) (citing *Bullock v. United Benefit Life Ins. Co.*, 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001)).

5

## IV.  DISCUSSION

As stated above, the FAA generally applies if the party seeking arbitration makes a showing that a contract calling for arbitration of the particular claim exists and that the contract evidences a transaction affecting interstate commerce.  9 U.S.C. § 2.  Because Plaintiff does not dispute that the Admission Agreement was a transaction affecting interstate commerce (Pl.'s Resp. 2), the only issue is the "arbitrability" of the wrongful death claim.  *See Howsam*, 537 U.S. at 83.

### A.    <u>Alabama and Federal Law Allow Pre-Dispute Arbitration Agreements</u>

Plaintiff argues that Alabama law prohibits pre-dispute arbitration agreements as being void against public policy and prohibited by statute.  (Pl.'s Resp. 11.)  Plaintiff cites Ala. Code § 6-5-485(a), which provides in part: "*After* a . . . health care provider has rendered services, or failed to render services, to a patient out of which a claim has arisen, the parties may agree to settle such dispute by arbitration."  § 6-5-485(a) (emphasis added).

However, Plaintiff has already conceded that the Admission Agreement had an effect upon interstate commerce (Pl.'s Resp. 2), and thus, to the extent that the wrongful death claim is arbitrable, *see infra*, the Admission Agreement is controlled by the FAA.  "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."  *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).  The FAA "preempts state law to the extent it treats arbitration agreements differently than other contracts."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005); *see also Circuit City Stores, Inc. v.*

*Adams*, 532 U.S. 105, 112 (2001) (stating that the FAA is "pre-emptive of state laws hostile to arbitration").

In light of the strong pre-emptive force of the FAA, to the extent that § 6-5-485 would limit the enforceability of arbitration agreements to after a claim has arisen, the statute is pre-empted as violating the Supremacy Clause. Placing a temporal restriction on arbitration agreements in the healthcare context to post-claim agreements would severely undercut arbitration agreements in this context. *See Keating*, 465 U.S. at 16. Furthermore, such a reading of the Alabama statute would be hostile to arbitration, as many arbitration agreements in the healthcare area are made prior to any accrual of a claim. *See Circuit City*, 532 U.S. at 112. Thus, § 6-5-485 is preempted by the FAA and the Supremacy Clause.

**B.      Plaintiff Did Not Agree to Arbitrate the Wrongful Death Claim**

At first blush, this appears to be a rather straightforward case. Defendants correctly point to Alabama Supreme Court precedent consistently compelling arbitration agreements in wrongful death cases against nursing homes. *Tenn. Health Mgmt., Inc. v. Johnson*, No. 1080762, 2010 WL 1424018 (Ala. 2010) (published); *Carraway v. Beverly Enter. Ala. Inc.*, 978 So. 2d 27 (Ala. 2007); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661 (Ala. 2004). However, Plaintiff attempts to distinguish these cases because, unlike the residents in the above cases, only Mrs. Entrekin signed the Admission Agreement and DRA. (Pl.'s Suppl. Resp. 8.)

The court will first discuss the recent case of *Johnson* before moving on to *Turcotte* and *Carraway*. Both parties describe *Johnson* as a wrongful death case. In that case, the

7

admission agreement containing the arbitration provision was signed by the resident's daughter, acting in various representative capacities, including "legal representative." *Johnson*, 2010 WL 1424018, at *1. The resident later sued the nursing home for personal injuries she suffered, acting through her daughter as next friend. *Id.* at *2. When the nursing home moved to compel arbitration, the daughter submitted an affidavit stating that "[a]t that time, I did not have a power of attorney over my mother, nor did I have any legal basis for signing my mother's name, or obligating her contractually." *Id.* at *3 (internal quotation marks omitted). Shortly thereafter, the resident died, and her other daughter, who was the resident's personal representative, filed an amended complaint stating "the same claims as did the initial complaint," but adding "the allegation that [the resident] was injured so severely during her stay at [the nursing home] that those injuries resulted in her death . . . ." *Id*. The nursing home renewed its motion to compel arbitration, and the Alabama Supreme Court concluded that there was a valid arbitration agreement, holding that the daughter who signed the agreement had implied apparent authority to bind the resident or "any representative of [the resident]" to arbitration. *Id.* at *5.

The emphasis on this case by the parties is misplaced because it is wholly unclear that *Johnson* presented a claim for wrongful death at all: The Alabama Supreme Court never explicitly made that fact clear; rather, there is only a cryptic statement that the complaint was amended to allege that the "injuries resulted in her death." *Id.* at *3. The words "wrongful death" never appear in the opinion, nor is there a statutory reference to the wrongful death cause of action. Because the complaint was filed before the resident's death, amending it to

8

allege that it caused the resident's death means that the case may have been maintained under a survival theory. *See* Ala. Code § 6-5-462 ("[A]ll personal claims upon which an action has been filed . . . survive in favor of . . . personal representatives . . . ."). As a survival action, the claim would still have belonged to the decedent through her estate.

In *Carraway*, the resident's brother signed an admission agreement, which included an arbitration provision, on the resident's behalf. 978 So. 2d at 28-29. The resident died at the nursing home, and her brother, as personal representative, asserted a wrongful death action against the nursing home.[2] *Id.* at 30. The Alabama Supreme Court held that the arbitration agreement, *which the brother signed*, was enforceable when he later sued on a wrongful death claim. The *Turcotte* case[3] is like the *Carraway* case.[4] The personal representatives sued on a wrongful death theory, and the question was whether they were bound to an arbitration provision in the decedents' admission agreements to which they were themselves signatories. The court found that they were.

Although the Alabama Supreme Court in *Carraway* and *Turcotte* relied upon the signatories' agency authority to bind the resident's estate to arbitration for the estate's claims, it is reasonable to conclude that they also agreed to arbitrate any wrongful death claim they

---

[2] A personal representative alone is entitled to bring a wrongful death claim as a statutory nominal party despite the fact that any award passes according to the statute of distribution. Ala. Code § 6-5-410(a); *See also* note 5, *infra*.

[3] *Turcotte* was two consolidated wrongful death cases against the same nursing home.

[4] There is one distinction between *Turcotte* and *Carraway*. In *Turcotte*, the personal representatives did sign the admission agreements containing the arbitration provision, but argued that they did not sign in their capacities as executor or administrator, but only as fiduciary parties. 894 So. 2d at 663. The Alabama Supreme Court appears to have found this distinction immaterial. *Id.* at 665.

9

may bring as personal representatives. This interpretation appears to be the only way to align the Alabama case law. On the one hand, Alabama courts have consistently held that wrongful death claims do not belong to a decedent. *See Ivey v. Wiggins*, 159 So. 2d 618, 619 (Ala. 1964) ("The chose in action here [wrongful death] never did belong to the intestate; the statute creates it only upon his wrongful death."); *Breed v. Atlanta B & C Ry. Co.*, 4 So. 2d 315, 317 (Ala. 1941) ("The right of action which the [wrongful death] statute gives is a new right, not derivative nor the right of succession to the person slain. It is not a right of property . . . ."). On the other hand, the recent Alabama Supreme Court decisions in *Turcotte* and *Carraway* compelled arbitration of wrongful death claims pursuant to arbitration agreements signed by the decedents' personal representatives acting as agents of the decedents.

The discussion between the two dissents and, to a lesser degree, the majority in *Turcotte* highlights the problem. The majority, discussing the arbitrability of the wrongful death claims, relied solely on the reasoning of *SouthTrust Bank v. Ford*, 835 So. 2d 990, 993 (Ala. 2002). In that case, the Alabama Supreme Court compelled arbitration against the administratrix of an estate attempting to recover the value of an improperly paid check even though she did not sign the decedent's deposit agreement that contained an arbitration provision. *Id*. Justice Woodall, in a dissenting opinion in *Turcotte* joined by Justice Johnstone, argued that "[t]he majority's reliance upon [*SouthTrust Bank*] is misplaced. In that case, the administratrix was asserting a claim on behalf of the decedent's estate . . . . This distinction is significant. However, the majority simply ignores it." *Turcotte*, 894 So.

2d at 672 (Woodall, J., dissenting). Justice Johnstone also dissented separately:

> Because a wrongful death action does not derive from the rights of a decedent, because the right to bring a wrongful death action accrues to and belongs to the personal representative of a decedent, not to the estate of a decedent, and because the right to bring a wrongful death action arises only after death, a living person is without authority to bind his or her future personal representative to arbitrate that personal representative's claim for wrongful death.

*Id.* at 671 (Johnstone, J., dissenting).

The *per curiam* majority opinion in *Turcotte* used its ink sparingly in addressing the concerns of the two dissents. The majority simply offered a brief description of *SouthTrust Bank*, and concluded, without elaboration, that the plaintiffs "are bound by the arbitration provisions contained in the admission contracts." *Id.* at 665. It is settled law indeed that a decedent's estate is bound to the choices a decedent makes with respect to a particular claim *that belonged to him*, including his decision to submit that claim to arbitration. *SouthTrust Bank* stands for this proposition. Agreeing with the dissents in *Turcotte*, Plaintiff argues forcefully that a wrongful death claim never belongs to the decedent. According to Plaintiff, because the wrongful death claim at no time belonged to Mrs. Entrekin, unlike the decedent's claim for the value of his check in *SouthTrust Bank*, Mrs. Entrekin's signature alone on the DRA is not effective to bind her children to arbitration.[5]

In other words, an interpretation of *Carraway* and *Turcotte* that mostly resolves the

---

[5] Because there is no surviving spouse, Mrs. Entrekin's children would recover any award from the wrongful death claim. *See* Ala. Code §§ 43-8-40, 43-8-42(1); *see also Steele v. Steele*, 623 So. 2d 1140, 1141 (Ala. 1993) ("The damages from a wrongful death award pass as though the decedent had died without a will.").

seeming conflict is to say that the personal representatives not only signed on behalf of the resident to arbitrate the resident's or the resident's estate's claims, but they also signed on their own behalf to arbitrate any wrongful death claim they may bring in the future as personal representative. Because a personal representative alone has statutory authority to pursue a wrongful death claim, *see Holt*, 56 So. at 912-13, he or she should be able to agree to arbitration of that claim *after* they assume that representative capacity office. *Carraway* and *Turcotte* appear to hold that a personal representative can agree to arbitrate *before* they assume the office of personal representative.

Resolution of that issue is not required because this case is different from *Carraway* and *Turcotte* in one crucial respect that is dispositive to Defendants' motion. In this case, Plaintiff, the executor[6], never signed Mrs. Entrekin's Admission Agreement or DRA and, therefore, never agreed in any capacity to submit to arbitration any future wrongful death claim. Arbitration is a matter of contract; thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582. Plaintiff never agreed to submit the wrongful death claim to arbitration and the decedent who signed the arbitration agreement never had, nor legally could have, a wrongful death cause of action. Thus, the decedent was without authority to agree to arbitrate a claim she never had or could have. Defendants' motion to compel arbitration is due to be denied.

---

[6] Executors are personal representatives within the meaning of Ala. Code § 6-5-410. *See Waters v. Hipp*, 600 So. 2d 981, 982 (Ala. 1992).

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motions to stay and compel arbitration (Doc. # 10) are DENIED.

DONE this 19th day of January, 2011.

/s/ W.  Keith Watkins<br>
UNITED STATES DISTRICT JUDGE